We're going to move now to our final case of the morning. This is Appeal 25-2417, Denuta Dec v. Kristi Noem et al. We're going to begin with oral argument on behalf of the appellant, Ms. McPelty, from you. Good morning. Thank you for your support of the meeting, counsel. Your Honors, I'm here today on behalf of Ms. Denuta Dec, the appellant in this case. Your Honors, her story starts several years ago when her United States citizen sister filed a visa proposal for her and for her mother. Their visas were eventually approved, but before Ms. Dec could continue in her immigration process, her mother died. Once her mother died, USCIS denied her the ability to continue with her speedbook application. Ms. McPelty, why did she only file the I-601A waiver form after her mother died in 2020, given that the visa was approved back in 2009? Your Honor, I'm not exactly sure about that, but at the point in time that she did file, she was ready to proceed with her application. And at the time that she did proceed with her application, there was, in effect, the amendment, the Immigration and Nationality Act that was passed in 2009 by Congress. Congress passed that particular amendment in order to ameliorate these types of harsh consequences when an appellant such as Ms. Dec gets shut out from the process completely by USCIS. USCIS did not, they did not apply the statute. In fact, they ignored the statute in her case. And that left Ms. Dec without any ability at all to continue the process of immigrating lawfully. By shutting her out of this process, they also completely disregarded the statute. That statute would specifically allow for a visa petition and any related applications to be adjudicated, notwithstanding that Ms. Dec fit that category exactly. And yet USCIS completely ignored that, and they denied her the opportunity to even present an application before the agency. Ms. Dec clearly presents a problem that Congress enacted the statute for, and she was not able to avail herself of that. The result in this case is that USCIS failed to fix this problem. Rather, they chose- I think you mean to address the reason the district court decided against you. Lack of suffering in that jurisdiction. Certainly, Your Honor. So getting to that, your question regarding that, my answer to that, Your Honor, is that this is a case that does not involve many of the types of situations that are spoken about in the district court decision and the cases that are referred to in the jurisdiction. Those cases such as Sonny v. Chateau, Herring-Burgin, Patel v. Warcraft, they all dealt with issues that relate directly to the adjudicative process. That is, when you're weighing evidence in the process, you're prioritizing the cases, or you're challenging a delay in the process. I think it would be good to start with the language of the statute. The statute says, no court shall have jurisdiction to review a decision or act by the Attorney General, now the Secretary, regarding a waiver under this clause, period. There aren't any exceptions. Understandably, Your Honor, however, Ms. Deck never even got to the waiver application. Ms. Deck should have been able to avail herself of Section 24L. Section 24L, as enacted by Congress, was an amendment to ameliorate situations like this. I understand your argument that on the merits, you'll apply it as a good claim. You need to address the language of the statute saying that it's a claim a court cannot consider. Your Honor, the argument that we would suggest to you at this time is that while, in fact, the statutory basis on which the claim that she's no longer eligible or cannot present this claim is something that she can't even reach, Your Honor. She can't reach the statute court. She cannot reach the ability to file this application because the agency failed to implement the statute that provides the ability for the deputy to submit that application. So is this a legal process argument? It's a process. It's an argument, statutory interpretation, Your Honor. It's a question of law that the agency failed to address the statute in the first instance that they completely disregarded Section 24L, the opportunity for an individual to even support an application. So she can't even get to the point where she can actually apply for the statute. And therefore, she doesn't have an opportunity to present the case before the agency to provide her argument regarding whether or not she is eligible for the waiver. Ms. McNulty, switching gears a little bit. Did you write the brief in this case? Yes. On page 12 of the brief in the standard of review section, there are a few case citations to cases that do not exist that are consistent with the way they're sometimes elucidated by an AI. Can you explain that? I'm sorry. Perhaps you can let us know whether or not artificial intelligence was used as part of the creation. It was not, Your Honor. It does raise the question. The brief cites two cases that do not exist and contains a manufactured quotation for one case that does exist. It's very difficult to see how these things could happen without AI. Your Honor, I apologize if I interrupted you on some issues. For your reference, it's on, we're talking about principally pages 12 to 13, so that might be where you take a look. Would you like to reserve the remainder of your time? At this point, Your Honor. Thank you, Ms. McNulty. Mr. Press, we'll move to you now for oral argument on behalf of the court. Before you, Your Honors, and please, the court, we believe this is a very straightforward case, and I'm giving this court's decision and so interested in interpreting the exact same statute and applying it, deepest and farthest, to background and prioritization decisions. The other side wants to talk a lot about the law is, in this context, not about jurisdiction, specifically jurisdiction-stricken sentences in the heart and end of, you can call it the bottom line, of whatever agency decision process is involved here with discretionary, unlawful presence, labor. More specifically, in Sony, this court obviously applied the jurisdiction law to even prioritization for employee assignment decision-making. And what we're essentially saying here is that underlying decision-making processes, including agency policies that are in place, I think it's here, the objective policy is agency is interpreting qualifying relative for whom the applicant is supposed to be helping. The agency is saying that qualifying relative must be the same person who is sponsoring the I-130 relative application to sponsor the beneficiary. Here, I need to move that foreign government visa to live here as a green card holder as well. That background policy is still an underlying decision architecture, just as much as prioritization decisions. I mean, this is a decision architecture. And we really just make this straightforward, a fortiori, logically, about applying Sony in the exact same statutory language to facts of the case. Honestly, unless there are any further questions, let me ask this question from Ms. Massimo. Thank you, Mr. Press. Ms. McDulty, we'll now go back to you for rebuttal argument. Again, I'd just like to reiterate that this next situation, in this case, incorporates a lack of a statutory interpretation of agency, and her inability to proceed with her application is what holds back a fair and logical result in this case. She is left without any particular means of which to challenge this other than through this court's intervention. If she is given what the defendants have, what the appellees have suggested, that she go into removal proceedings to eventually go through the process of being ordered removed by an immigration judge, filing an appeal before the Board of Immigration Appeals, and then filing, finally, a petition for review before this court, we are brought back to the very same issue that we were standing here before you today. And in that process, she will face, potentially, detention by the current, the detention for being here in the United States without status. And while she's in this process before your court right now today, the question of law can be decided with this very narrow, very narrow issue that she has presented before you, which is she's unable to utilize the dual 4L statute to allow her to use the mother who died, and now she no longer can use her as a deceased qualifying relative for the application and the petition that she seeks. Without that, she is left with nothing. She's been here for years. She's attempted to use the lawful immigration process, and in doing so, she has followed all of the steps along. And this is one opportunity, one single opportunity where she could thread the eye of the needle jurisdiction to go ahead and present to the court today this legal question that can be answered as a question of law. It's not a question of fact. It's not a question of discretion. It's not a question that talks about the process. It is a discussion for the court to have whether or not she, in fact, is qualified under this 204-L amendment, which was specifically designed for individuals such as her. In this case, your honor, we would ask the court to reverse and remand the decision of the district court so that the district court can provide instructions to U.S. Senate to follow its statute and to provide the respondent with the necessary that she seeks. Thank you, Ms. McDulty. Thank you, Mr. Prest. The case will be taken under advisement. That will close the oral arguments in this courtroom for the month.